FILED
 2010 Jan-28  PM 04:44
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TOMMY BOHANNON,     ] | |
| ] | |
| Plaintiff,     ] | |
| ] | |
| vs.     ] | 1:09-CV-0286-LSC |
| ] | |
| MICHAEL J. ASTRUE,     ] | |
| Commissioner,     ] | |
| Social Security Administration,     ] | |
| ] | |
| Defendant.     ] | |

MEMORANDUM OF OPINION

I.   Introduction.

The plaintiff, Tommy Bohannon, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB").  Mr. Bohannon timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Bohannon was fifty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision (thirty-seven years old on the alleged

disability date), and he has at least a high school education.  (Tr. at 7.)  His past work experience includes employment as a mechanic, motorcycle tester, tear down/clean-up worker, and security guard.  (*Id*. at 55-63, 71, 321-25 and Doc. 9 at 3.)  *Id*.  Mr. Bohannon claims that he became disabled on February 15, 1993[1], due to arthritis and associated pain, epileptic seizures, an ulcer, bursitis, as well as high blood pressure and prostate problems.  (Tr. at 47-51, 64, 332-36, 339-42 and Doc. 8 at 5.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 404.1520(a)(4)(ii).  These

---

[1] Plaintiff previously filed for disability, although that claim was denied on July 16, 1999. Thus, the period of disability at issue in this instance is from July 17, 1999, through December 31, 2001, the date Plaintiff was last insured for DIB.  (Tr. at 12, Doc. 8 at 5).

impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id*.) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to

the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*.

Applying the sequential evaluation process, the ALJ found that Mr. Bohannon "last met the insured status requirements of the Social Security Act on December 31, 2001." (Tr. at 14.) He further determined that Mr. Bohannon has not engaged in substantial gainful activity since the alleged onset of his disability through December 31, 2001, his date last insured. *Id*. According to the ALJ, Plaintiff has the "following severe impairments: seizure disorder; hypertension; gastroesophageal reflux disease (GERD); asthma; arthritis; and depression and anxiety." *Id*. However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 15. The ALJ determined that Mr. Bohannon has the residual functional capacity to

> perform light work which requires lifting no more
> than 20 pounds at a time with frequent lifting or

> carrying of objects weighing up to 10 pounds. The claimant would be precluded from operating foot and leg controls due to a history of knee arthritis. Claimant should avoid operating hazardous machinery and working at unprotected heights due to a seizure disorder. Claimant should avoid concentrated exposure to gases, fumes, dirt, smoke and extremes of temperature and humidity due to a history of asthma. Finally claimant is limited to simple, routine tasks that do not involve significant interaction with others, and does not require satisfaction of production quotas, due to depression and anxiety.

*Id.* at 15-16.

The ALJ then determined Plaintiff is not capable of performing past relevant work. (Tr. at 17.) However, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there are a number of jobs in the national economy Plaintiff can perform. *Id.* at 22. Based on the testimony of a vocational expert ("VE"), these jobs include work as an assembler (4,000 jobs in north central Alabama), inspector and sorter (3,000 jobs in north central Alabama), and security work or unskilled office work (2,000 jobs in north central Alabama). *Id.* at 18. Accordingly, the ALJ entered a finding that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from February 15, 1993, the alleged onset date,

through December 31, 2001, the date last insured." *Id*. at 19.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Robinson v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if

this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Mr. Bohannon alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for one reason. (Doc. 4-9.) Plaintiff claims the ALJ "improperly discounted [Plaintiff's] testimony of pain and depression." *Id*. at 9. Within this argument, Plaintiff makes two further contentions. First, Plaintiff claims the ALJ "did not properly consider the combined effects of the Plaintiff's multiple impairments." *Id*. at 7. Second, Plaintiff contends the ALJ failed to fully and fairly develop the record. (Doc. 8 at 8-10.)

A.   Subjective Complaints of Pain.

To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting

*Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In the instant case, the ALJ found that Claimant's "medically determinable impairments could have been reasonably expected to produce some of the alleged symptoms, but not all, and not to the degree alleged." (Tr. at 16). He further determined that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible or supported by the medical evidence of record." *Id.*

In making his determination, the ALJ examined Plaintiff's medical records and found that Plaintiff was treated periodically for multiple complaints of pain, seizures, asthma, and other routine complaints. (Tr. at

16). However, the ALJ noted that records indicate many of Plaintiff's complaints are controlled by medication. The ALJ found Plaintiff's seizures are not only controlled by medication, but Plaintiff himself testified that medication helped his seizures and that he had not had seizures in a long time. *Id*. at 16, 89-95, 182-90. In fact, medical records confirm only two seizures suffered by Plaintiff, both of which were after the period at issue. *Id*. at 141-42, 145-46, 263. Further, in spite of being treated periodically for hypertension, there is nothing to show that Plaintiff's blood pressure has been "consistently elevated," and Plaintiff has been treated with medication for hypertension. *Id*. at 16, 75, 105, 107, 111, 142, 146, 162-65, 167, 231-34, 236, 243, 245, 247, 249, 252, 254-55, 257-59, 261, 264. Plaintiff was also treated with medication, along with a change in his diet, due to his complaints of GERD, although testing revealed "no abnormalities and the small bowel pattern appeared normal." *Id*. at 16-17, 74-75, 77-80, 87, 92-94, 96, 177, 179-80, 187. As to Plaintiff's asthma, the ALJ noted that it too was under control, tests did not reveal any disabling level of limitation, and Plaintiff's periodic upper respiratory infections responded to antibiotic treatment. *Id*. at 17, 88-89, 95, 162-63, 165, 167, 173-74, 176,

203-08, 231-32, 234, 236, 245-46, 258-61, 264, 306-07. Finally, the ALJ noted that Plaintiff has been treated "conservatively and appropriately with psychotropic medication, i.e., Prozac" for depression, and although Plaintiff recently sought treatment for depression, it was "well after his alleged onset date."[2] *Id.* at 17, 210-21

Additionally, the ALJ noted that, while Plaintiff suffers from residual pain in his knees and neck due to a motor vehicle accident in September 1998[3], medical records show he has only been treated periodically because of pain complaints, "and the only clinical note for the time period before claimant's date last insured suggests the presence of some crepitus in the neck, but otherwise a full range of motion." (Tr. at 17, 102, 110-11, 162, 223-26, 231, 249-50, 260).

The ALJ determined that the "evidence as a whole demonstrates that [Plaintiff] has impairments which have been treated appropriately", and

---

[2] Plaintiff points to several instances of complaints of depression, however none of these complaints fell within the period at issue. (Doc. 8 at 6-7).

[3] Although Plaintiff points to records indicating several complaints of pain, only one instance, when Plaintiff was treated for neck and knee pain in 2000, occurred during the period at issue. (Doc. 8 at 6).

"[n]o treating or examining physician has indicated that they believed the claimant to be disabled for *all* work due to any impairment(s)." *Id*. The ALJ also found it important that Plaintiff "has not been hospitalized overnight or sought emergency treatment on a regular basis." *Id*.

Based on the medical evidence of record, the ALJ was correct in finding that Plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely credible or supported by the medical evidence of record" (Tr. at 16).

### i. Combined Effect of Impairments.

Plaintiff claims that he "suffers from multiple impairments that in combination could reasonably give rise to the limitations alleged," but the ALJ did not properly consider the combined effect of Plaintiff's multiple impairments. (Doc. 8 at 7-8.) Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the

> combined effect of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Swindel v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). When there is a combination of impairments, the claimant may be found disabled even though none of the individual impairments, including pain, is disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

The Eleventh Circuit has held that an ALJ's statement that:

> [B]ased upon a thorough consideration of all evidence, the ALJ concludes the appellant is not suffering from any impairment, *or combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months

is sufficient evidence of proper consideration of the claimant's combined impairments. *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1987). *See also Jones v. Department of Health and Human Serv's*, 941 F.2d 1529, 1553 (11th Cir. 1991) (holding that ALJ's statement that though claimant "'has severe residuals of an injury' he does not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4'" to be sufficient evidence of

combined impairment consideration).

In this case, based upon the record as discussed above, the ALJ determined Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," nor was there any "evidence that the claimant has any impairment or combination of impairments which would preclude all work." (Tr. at 15, 17). Therefore, the ALJ properly considered the combined effect of Plaintiff's impairments and his decision was supported by substantial evidence.

    ii.    Failure to Develop the Record.

Plaintiff next claims that "his lack of medical treatment is due to his lack of insurance and financial means" and that the ALJ did not fully and fairly develop the record in that his "inference that [Plaintiff] chose not to seek medical treatment is not supported by substantial evidence." (Doc. 8 at 8-9). Administrative hearings under the Social Security Act are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ has the duty to develop the facts fully and fairly and to probe

conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). In any case, there must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

Plaintiff bases his argument on the fact that, while the ALJ made note of Plaintiff's "residual pain in his knees and back," resulting from a motor vehicle accident, the ALJ, in error, further stated that "the medical evidence reflects that the claimant has only been treated periodically due to complaints of pain. . . ." (Doc. 8 at 8, Tr. at 17). Plaintiff contends, and is correct, that an individual's inability to afford treatment may excuse "infrequent or irregular medical visits or failure to seek medical treatment," SSR 96-7p, and Plaintiff did state on two separate occasions that he was unable to afford medical treatment (Tr. at 102, 173). However, the first note of financial problems came in August 1995, prior to the period at issue, when it was noted that "[Plaintiff] has lost his employment at Sears and is looking for a new job. He does not want any testing to be done because of

financial reasons." (Tr. at 173).  Importantly, the records also indicate that at that time he was merely in for "refills of his medications" and "has had no more seizures, is doing fairly well."  *Id*.  The second complaint of financial difficulties came in December 2000, when Plaintiff was examined due to neck and knee pain.  The doctor noted, "I tried to get him to get some xrays but he can not afford those he says and he declined to do that." (Tr. at 102).  However, the doctor also noted that Plaintiff "[b]asically wants his medicine refilled" and "we will be very stingy with the pain medicine from here on out."  *Id*.

Further, Plaintiff's medical history, as discussed above, indicates Plaintiff was able to find medical treatment when needed.  *Id*. at 16-17.  Not only could Plaintiff find medial treatment, but the records indicate that over the years at issue, Plaintiff was able to sustain treatment with a rather lengthy list of medication.  (Tr. at 116-24, 229, 265-74, 310).

Thus, there is nothing, other than two statements made by Plaintiff, to indicate that his limited financial means prevented him from obtaining treatment.  Therefore, the ALJ did not have an obligation to look further

into Plaintiff's financial situation and the record was fully and fairly developed.

IV. Conclusion.

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the Commissioner will be affirmed by separate order.

Done this <u>28th</u> day of <u>January 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671